## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | | |
|---|---|---|
| **DANNY RAY DIGMAN,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-06-CV-070-SS** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | |
| **Director, Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:     The Honorable Sam Sparks, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Petitioner's Brief Regarding Application (Document 2); Respondent's Answer (Document 10); and Petitioner's Motion for Summary Judgment (Document 11). Petitioner, proceeding pro se, has paid the filing fee for his application.  For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 331st Judicial District Court of Travis County, Texas, in cause number 1030857, styled The State of Texas v. Danny Ray Digman, Sr.  Ex parte Digman, Appl. No. 63,443-01 at 11-20.  On January 28, 2004, Petitioner was charged under a 17-count indictment with securities fraud, the sale of securities without being registered as a dealer or agent, and sale of unregistered securities.  Id. at 2-7.  On March 2, 2004, Petitioner filed a motion to quash the indictment, arguing that the Texas Securities Act was unconstitutionally vague and the indictment failed to set forth an offense in plain and intelligible words.  Id. at 67.  It is not clear whether the trial court ruled on Petitioner's motion to quash before he ultimately pleaded guilty.

The state waived counts 3-9 and 11-17, and Petitioner pleaded guilty to Counts 1, 2, and 10. Ex parte Digman, Appl. No. 63,443-01 at 12, 15, 18.  Count 1 accused Petitioner of engaging in fraud in connection with the offer and sale of an ATM investment program, "being a security, to wit: an investment contract," to eight complainants in March - June 2003, receiving an aggregate amount of $100,000 or more.  Id. at 2-3.  Specifically, Petitioner was accused of committing fraud by failing to disclose to the complainants the material facts:

1.    "that false certificates were issued to prior investors in the PaymentWorks ATM program that indicate that such prior investors had purchased full ownership" in an ATM located with a particular merchant;

2.    "that monthly statements were sent to prior investors that falsely represented that revenues from [ATMs] were used to pay their monthly returns;"

2

3.      that on or about May 20, 1988, Digman was convicted for theft by check in the 181st District Court of Randall County, Texas in Cause Number 6013-B, and was sentenced to seven years in TDCJ;

4.      that on or about May 23, 1988, the 251st District Court of Potter County, Texas revoked Digman's probation and sentenced him to seven years in TDCJ for theft;

5.      that on or about April 23, 1993, Digman "pled guilty to charges relating to false, fictitious and fraudulent claims, aiding and abetting" in Cause Number 2:93-CR-5 in federal district court for the Norther District of Texas, and that he was sentenced to confinement, supervised release and restitution;

6.      that on or about January 18, 1994, Digman pled guilty to theft in the 181st District Court of Randall County, Texas in Cause Number 7905-B and was sentenced to five years in TDCJ.

Count 2 accused Petitioner of selling an investment contract to a particular complainant "without having been duly registered as a securities dealer or agent [with] the Securities Commissioner of State of Texas as is provided by law in such cases." Id. at 3-4.  Count 10 accused Petitioner of selling an investment contract to a particular complainant "and said security was . . . not registered by either qualification, notification, or coordination [with] the Securities Commissioner of the State of Texas, and . . . no permit for the sale of said security had been granted [.]" Id. at 5.

On September 8, 2004, the trial court sentenced Petitioner to 12 years in state prison for securities fraud as alleged in Count 1, and ten years for the registration offenses alleged in Counts 2 and 10. Id. at 11-25.  Petitioner did not file a direct appeal.  On September 9, 2005, Petitioner filed a state application for habeas corpus relief.  Ex parte Digman, Appl. No. 63,443-01 at 34-39.  The trial court forwarded the application and its findings to the Texas Court of Criminal Appeals, which denied relief without written order on January 18, 2006. Id. at cover.  Petitioner executed his petition for federal writ of habeas corpus on January 24, 2006.

3

### B.    Factual Background

The factual background of this case is stated below in summary of the Texas State Securities

Board's findings of fact in its "Emergency Cease and Desist Order."

PaymentWorks was a Texas domestic business corporation.  Petitioner was the vice president and chairman of the board of PaymentWorks.  XpressPay purported to be a corporation affiliated with PaymentWorks, but the records of the Texas Secretary of State reflect that XpressPay neither filed with nor received authorization from the Secretary of State to transact business as a domestic or foreign corporate entity.

The Forbes magazine issued dated July 7, 2003, carried an advertisement that read in part: "IRA PLAYING DEAD???  ROLL IT OVER!  Amazing 41% Annualized Return.  Big Money, Free Report."  The advertisement directed readers to call a toll-free telephone number for more information.

In or about July 2003, an investigator with the Enforcement Division of the Texas State Securities Board reviewed the Forbes advertisement and called the phone number.  A pre-recorded message directed callers to an Internet site and requested contact information to receive a return telephone call.  The investigator left a name and a Texas phone number.

Keith Pelkey, identifying himself as a representative of PaymentWorks, returned the investigator's call and offered the opportunity to invest in an automated teller machine ("ATM") program.  Pelkey described an arrangement where the investigator would purchase at least three ATMs for $2,995 each.  PaymentWorks would then install and service the ATMs, and PaymentWorks and the investigator would share in the proceeds of service charges paid by the ATM users.  Pelkey told the investigator she would receive monthly payments of her share of the service charges.  Pelkey later sent sales materials to an address provided by the investigator.

The sales materials described ATM-related investments offered by PaymentWorks, XpressPay or both.  The materials also included a four-page section styled "Prospectus for PaymentWorks, Inc." that identified Petitioner as that company's chairman.  Also included was an unexecuted "Purchase Agreement" that was to be completed by the investigator, then acknowledged and accepted by Xpress Pay.  The purchase agreement did not mention or attribute any responsibilities to Payment Works.  A document entitled "Income Producing Assets - A Business Investment" reflected that the investigator would be compensated with "finder fees" for referrals made to Pelkey.

4

The investigator reviewed the Xpress Pay website, which was presented on a background which purported to be copyrighted by PaymentWorks. The website also contained a nearly verbatim reproduction of a letter previously sent to the investigator by Pelkey, but which purported to be authored by Petitioner. The website also included a form substantially similar to the "Purchase Agreement" offered by XpressPay, but which indicated that PaymentWorks was the "seller" of the investment in the ATM program.

On or about July 29, 2003, Pelkey contacted the investigator and again offered the investment opportunity. Pelkey told the investigator that PayWorks and XpressPay were the same company.

The ATM investment program was not registered by qualification, notification, or coordination and no permit has been granted for its sale within Texas. Petitioner was not registered with the Securities Commissioner as a security dealer, agent, investment advisor or investment advisor representative at any material time, and had not submitted a notice-filing to the Securities Commissioner as investment advisor or investment advisor representative at any material time.

See Tr. at 16-23. The Texas State Securities Board entered the cease and desist order on August 4, 2003. On October 23, 2003, the Securities Board, in conjunction with the District Attorney's Office of Travis County, executed an evidentiary search warrant at the premises of PaymentWorks. Id. at 47-48. The investigator who initially made contact with Pelkey reviewed the seized evidence and determined that PaymentWorks, Petitioner, and his common-law wife Lori Burrow were operating a "Ponzi scheme" where payments to existing investors came not from business activities, but from money received from new investors. Id.; Ex parte Digman, Appl. No. 63,443-01 at 30-31.

**C.    Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.     Petitioner's conviction under the Texas Securities Act is unconstitutional, as the Act is facially unconstitutionally vague because the statute does not define the term "investment contract;" and

2.     The use of the United States Supreme Court's definition of the term "investment contract" in Securities and Exchange Commission v. Howey Co., 328 U.S. 293, 301

5

(1946) violates due process because the definition was intended for regulatory purposes and is too vague for application to a criminal prosecution.

**D.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct.

_____

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

1495, 1523 (2000)).   The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.   See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts.   See 28 U.S.C. § 2254(e)(1).   While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence.   See id.   Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings.   See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.**     **Texas Securities Act**

In his first ground for relief, Petitioner argues that the Texas Securities Act is unconstitutionally vague because it does not define the term "investment contract," and therefore Petitioner's conviction should not stand.   Petitioner raised this same issue in his state application for writ of habeas corpus.   The state courts rejected the merits of Petitioner's claim.   As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

This Court begins with the presumption that the legislation is constitutional.  See Screws v. United States, 325 U.S. 91, 98, 65 S. Ct. 1031, 1033-34 (1945).   A conviction may be unconstitutional if it is obtained under a statute so vague that it does not provide adequate notice of what conduct will be deemed criminal.  Springer v. Coleman, 998 F.2d 320, 322 (5th Cir. 1993). The statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute and must not encourage arbitrary and erratic arrests and convictions. Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S. Ct. 839, 843 (1972).   A facial challenge for vagueness is appropriate only on an allegation that the law is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all."  Ferguson v. Estelle, 718 F.2d 730, 735 (5th Cir. 1983) (citing Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688 (1971)).

The Texas Securities Act clearly states that the statutory definition of "security" or "securities," includes  "profits or earnings of any . . . investment contract."  See TEX. REV. CIV. STAT. ANN. Art. 581-4(A).  Petitioner's convictions include committing securities fraud, selling an investment contract without having been duly registered as a securities dealer or agent with the Securities Commissioner of the State of Texas, and selling an investment contract which was not registered with the Securities Commissioner of the State of Texas and for which no permit had been granted.  With reference to the selling unregistered securities charge, Article 581-7 explicitly states:

> No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner; and no such permit shall be granted by the Commissioner until the issuer of such securities or a dealer registered under the provisions of this Act shall have filed with the Commissioner a sworn statement verified under the oath of an executive officer or partner of the issuer, or of such registered dealer, and attested by the secretary or partner thereof, setting forth the following information. . . .

TEX. REV. CIV. STAT. ANN. Art. 581-7.   The section goes on to enumerate several pieces of information which must be presented to the Commissioner in order to secure a permit.  Article 581-29 sets for the penalty for failing to register:

> [Any person who shall] [s]ell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after September 6, 1955, unless said security or securities have been registered or granted a permit as provided in Section 7 of this Act, shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than $5,000 or imprisonment in the penitentiary for not less than two or more than 10 years, or by both such fine and imprisonment.

The language of the statute makes it plain that Petitioner must have either secured a permit from the Commissioner of the State Securities Board before he sold those securities or must have registered the securities through one of the several procedures listed in the statute.  Article 581-29 clearly describes the penalty for failing to comply.

Article 581-12 specifically addresses agent or dealer registration requirements:

> No person, firm, corporation or dealer shall, directly or through agents, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided. No agent shall, in behalf of any dealer, sell, offer for sale, or make sale of any securities within the state unless registered as an agent for that particular registered dealer under the provisions of this Act.

<u>See</u> TEX. REV. CIV. STAT. ANN. Art. 581-12.  Article 581-29 contains the penalty for failing to

register:

> Any person who shall:  Sell, offer for sale or delivery, solicit subscriptions or orders
> for, dispose of, invite offers for, or who shall deal in any other manner in any security
> or securities without being a registered dealer or agent as in this Act provided shall
> be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay
> a fine of not more than $5,000 or imprisonment in the penitentiary for not less than
> two or more than 10 years, or by both such fine and imprisonment.

The specificity of the statute is sufficient to put a person of ordinary intelligence on notice that he

must register as an agent or dealer under the specific terms of the act before selling any sort of

securities, as well as that he could be fined and/or imprisoned.  Petitioner, by pleading guilty,

admitted he had not registered the ATM investment contracts with the state as the Act provided at

the time he sold the securities.  Nor had Petitioner complied with the methods and conditions of

registration required for dealers under Article 581-13, which requires potential dealers to submit a

detailed application to the Commissioner, including the applicant's previous history and records of

financial dealings.  TEX. REV. CIV. STAT. ANN. Art. 581-13.

> Article 581-9 addresses fraud as follows:

> In connection with any permit to sell securities the Commissioner shall require all offers for
> sale of said securities to be made through and by prospectus which fairly discloses the
> material facts about the plan of finance and business. Said prospectus shall be filed with and
> approved by the Commissioner; provided, however, if the applicant files a prospectus or
> offering circular with the Commissioner which is also filed with the S.E.C. under the
> Securities Act of 1933, as amended, or the regulations thereunder, this subsection shall in all
> respects be satisfied. Failure to comply with this requirement shall be treated as a violation
> of this Act, subjecting the parties responsible to the consequences thereof as provided herein.

TEX. REV. CIV. STAT. ANN. Art. 581-9.  Petitioner, by pleading guilty, admitted he failed to disclose

material facts about the plan and finance of the ATM investment scheme.  Thus, according to this

specific language, he is subject to the consequences as provided in the Act, which are repeated below

according to Article 581-29:

> [Any person who shall] [i]n connection with the sale, offering for sale or delivery of, the purchase, offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities, whether or not the transaction or security is exempt under Section 5 or 6 of this Act, directly or indirectly:
>
> (1) engage in any fraud or fraudulent practice;
>
> (2) employ any device, scheme, or artifice to defraud;
>
> (3) knowingly make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (4) engage in any act, practice or course of business which operates or will operate as a fraud or deceit upon any person, is guilty of a felony and upon conviction shall be:
>> (a) imprisoned for not less than 2 or more than 10 years and fined not more than $10,000, if the amount involved in the offense is less than $10,000;
>> (b) imprisoned for not less than 2 or more than 20 years and fined not more than $10,000, if the amount involved in the offense is $10,000 or more but less than $100,000; or
>> (c) imprisoned for life or for not less than 5 or more than 99 years and fined not more than $10,000, if the amount involved is $100,000 or more."

TEX. REV. CIV. STAT. ANN. Art. 581-29.  The statute provides ample notice that violations for fraud

have specific penalties.  Petitioner, having failed to disclose material facts of his investment scheme

to both investors and the State, violated the plain language of the statute and the penal provisions

make the consequences clear.

Furthermore, in evaluating the facial constitutionality of a state statute, a federal court is

bound by the constructions placed on that statute by state court decisions.  Ferguson v.Estelle, 718

F.2d 730, 733 n.5 (5th Cir 1983) (citing New York v. Ferber, 457 U.S. 747, 769 n.24, 102 S. Ct. 3348, 3349 n.24 (1982); Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 2299 (1972)). The Texas Securities Act has been applied by the state courts and found to be constitutional in cases similar to Petitioner's.  Rejecting a vagueness challenge in Morgan v. State, 557 S.W.2d 512, 514-15 (Tex. Crim. App. 1977), the Texas Court of Criminal Appeals acknowledged the Papachristou holding that a statute is void for vagueness when it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.  Applying the standard, the Morgan court found no error where a trial court denied a motion to quash the appellants' indictments since "[c]ount two of each indictment specifically alleges that the security involved is an investment contract.  Regardless of what vagueness may be in [the Texas Securities Act's] phrase 'any other instrument commonly known as a security,' the term is not vague as used in appellants' cases."  Id. at 514.

In Caldwell v. State, 95 S.W.3d 563 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd), the Court of Appeals for the First District of Texas analyzed the term "investment contract" in the context of challenges to the legal and factual sufficiency of the evidence in a state criminal prosecution of an individual who, like Petitioner, was accused of running a Ponzi (or pyramid) scheme.  Discussing the development of Texas courts' understanding of that term since Howey, the court of appeals implicitly found no unconstitutional vagueness in the term.  The court of appeals cited S.E.C. v. Koscot Interplanetary, Inc., 497 F.2d 473 (5th Cir. 1974), as an example where a pyramid scheme was held to constitute an "investment contract."  Id. at 568.

The Texas Securities Act is an extremely detailed statute, providing a framework for the State to protect the interests of investors.  The excerpts above demonstrate that the legislature crafted the

statute with great specificity, providing Petitioner with more than sufficient notice of what conduct the Act prohibits.  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in its determination that the Texas Securities Act is not void for vagueness with respect to Petitioner's offenses.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

**C.      Supreme Court's Definition of "Investment Contract"**

In his second ground for relief, Petitioner argues that the use of the United States Supreme Court's definition of the term "investment contract" in Securities and Exchange Commission v. W. J. Howey Co. violates due process because the definition was intended for regulatory purposes and is too vague for application to a criminal prosecution.[2]  Securities and Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 301, 66 S. Ct. 1100, 1104 (1946).  Petitioner raised this same issue in his state application for writ of habeas corpus.  The state courts rejected the merits of Petitioner's claim.

The Supreme Court has held that one cannot expect mathematical certainty from the language of a statute.  Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S. Ct. 2294, 2300 (1972).  Rather, a constitutional statute may be marked by flexibility and reasonable breadth, rather than meticulous specificity, so long as it is clear what the statute as a whole prohibits.  See Id.; Esteban v. Central Missouri State College, 415 F.2d 1077, 1088 (8th Cir. 1969).   Laws must give fair

_____

[2]The Supreme Court defined an investment contract for purposes of the Securities Act as, "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."

warning of what is proscribed, provide standards to see that they are not arbitrarily and discriminatorily applied, and be explicit enough to avoid a chilling effect.  United States v. Irving, 509 F.2d 1325 (5th Cir. 1975) (citing Grayned).

The Texas Securities Act does not define the term, "investment contract."  The United States Supreme Court defined investment contract as used in the Federal Securities Act in Securities and Exchange Commission v. W. J. Howey Co..  See W. J. Howey Co., 328 U.S. 293, 66 S. Ct. 1100. The Texas Court of Criminal Appeals adopted the Howey test in Bruner v. State, as a workable formula or a starting point in determining whether a contract, plan, or scheme is an investment contract under the Texas Securities Act.  Bruner v. State, 463 S.W.2d 205, 213 (Tex. Crim. App. 1970).  However, the court made clear that the Howey definition should not be adhered to strictly in every circumstance.  Id. at 214.  Therefore, it is unclear whether the Court of Criminal Appeals used the Howey definition in adjudicating Petitioner's claims as opposed to deciding the issue on purely state law grounds.  Even if the state courts did apply Howey, this application would not be unreasonable, nor is the definition inappropriate in this context.[3]  An effective regulatory scheme includes imposing and enforcing penalties to uphold the law.  Petitioner's activity certainly qualifies as a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of others, as defined under Howey and by the Fifth Circuit.  See Bruner, 463 S.W.2d at 212; Blackwell v. Bentsen, 203 F.2d 690 (5th Cir. 1953).  The penalties in the Texas Securities Act are specific enough to give notice of what is considered

---

[3]Because of the similarities between 15 U.S.C. § 77(b)(1) (Federal Securities Act of 1933) and article 581-4(A), Texas courts often look to federal cases interpreting the Federal Securities Act of 1933 for guidance in interpreting the Texas Securities Act.  Thomas v. State, 65 S.W.3d 38, 42-43 (Tex. Crim. App. 2001).

criminal conduct, without producing a chilling effect.   Furthermore, the legislature specifically provided the courts broad authority in applying the Texas Securities Act consistent with the Act's central purpose of protecting investors.   See TEX. REV. CIV. STAT. ANN. Art. 581-10-1.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.   Accordingly, Petitioner's claim does not warrant federal habeas relief.

## **RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied and any pending motions be terminated.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.   The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See 28 U.S.C. § 636(b)(1)(C);   Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);   Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of August, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE